Brady L. Rasmussen [9619]
**Parsons Behle & Latimer**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
ecf@parsonsbehle.com
brasmussen@parsonsbehle.com

Norman E. Siegel*
siegel@stuevesiegel.com
Barrett J. Vahle*
vahle@stuevesiegel.com
Andi M. Hammack*
hammack@stuevesiegel.com
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100

*Attorneys for plaintiffs Daniella Rios and Bella Donna Tordecillas, individually and on behalf of all others similarly situated*

*\* Pro Hac Vice Pending*

---

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DANIELLA RIOS and BELLA DONNA TORDECILLAS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>INSTRUCTURE, INC.,<br><br>Defendant. | **COMPLAINT**<br>**[PROPOSED CLASS ACTION]**<br><br>Case No. 2:26-cv-00414<br><br>Judge |

Plaintiffs Daniella Rios and Bella Donna Tordecillas ("Plaintiffs"), on behalf of all others

similarly situated, by and through their undersigned counsel, bring this Class Action Complaint

4932-3403-1275

against Instructure, Inc. ("Defendant"). Plaintiffs allege the following upon information and belief based on and the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

### **INTRODUCTION**

1.      Plaintiffs and the proposed Class Members (defined below) bring this class action lawsuit on behalf of all persons who entrusted Defendant with sensitive Personally Identifiable Information ("PII"[1] or "Private Information") that was impacted in a data breach that Defendant recently experienced (the "Data Breach" or the "Breach").[2]

2.      Plaintiffs' claims arise from Defendant's failure to properly secure and safeguard Private Information that was entrusted to it, and its accompanying responsibility to store and transfer that information.

3.      Defendant is a web-based learning management system that provides services for schools.[3] It is used by learning institutions, educators, and students to access and manage online course learning materials and to communicate.[4]

4.      Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiffs and Class

---

[1] Personally identifiable information generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its face expressly identifies an individual.

[2] Lawrence Abrams, *Canvas login portals hacked in mass ShinyHunters extortion campaign*, BLEEPINGCOMPUTER, May 7, 2026, https://www.bleepingcomputer.com/news/security/canvas-login-portals-hacked-in-mass-shinyhunters-extortion-campaign/.

[3] https://community.instructure.com/en/kb/articles/662716-what-is-canvas (last visited May 8, 2026).

[4] *Id.*

4932-3403-1275

Members to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5.    The ransom group, ShinyHunters, claims that it gained access to Defendant's network and acquired "280 million student and staff records tied to 8,809 schools, universities, and education platforms using its Canvas learning management system."[5] "The ShinyHunters gang later told BleepingComputer that the stolen data included user records, private messages, enrollment data, and other information allegedly gathered through Canvas data export features and APIs."[6]

6.    The ransom group ShinyHunters posted the following threat to release the Private Information of individuals who used Canvas by Instructure:

---

[5]Lawrence Abrams, *Canvas login portals hacked in mass ShinyHunters extortion campaign*, BLEEPINGCOMPUTER, May 7, 2026, https://www.bleepingcomputer.com/news/security/canvas-login-portals-hacked-in-mass-shinyhunters-extortion-campaign/.
[6] *Id.*

4932-3403-1275



7.      Defendant failed to take precautions designed to keep individuals' Private

Information secure.

8.      Defendant owed Plaintiffs and Class Members a duty to take all reasonable and

necessary measures to keep the Private Information it collected safe and secure from unauthorized

access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet

breached its duty by failing to implement or maintain adequate security practices.

9.      The sensitive nature of the data exposed through the Data Breach signifies that

Plaintiffs and Class Members have suffered irreparable harm. Plaintiffs and Class Members have

4932-3403-1275

lost the ability to control their Private Information and are subject to an increased risk of identity theft.

10.    Defendant, despite having the financial wherewithal and personnel necessary to prevent the Data Breach, nevertheless failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it maintained for Plaintiffs and Class Members, causing the exposure of Plaintiffs and Class Members' Private Information.

11.    As a result of Defendant's inadequate digital security, Plaintiffs' and Class Members' Private Information was exposed to criminals. Plaintiffs and the Class Members have suffered and/or will suffer injuries including (1) financial losses caused by misuse of their Private Information; (2) the lost use value or diminished value of their Private Information as a result of the Data Breach; (3) lost time associated with detecting and preventing identity theft; (4) theft of personal and financial information; (5) current and impending mitigation costs.

12.    This Data Breach occurred during finals or midterms for many students causing increased anxiety and an inability to access their coursework, study materials, and in some cases submit final exams.[7]

13.    Upon information and belief, Plaintiffs' Private Information is in the hands of cyber criminals and therefore available on the Dark Web as a result of the Data Breach.

14.    Plaintiffs brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiffs and Class Members; (ii) warn Plaintiffs and Class Members of Defendant's inadequate

---

[7] Hannah Park, et al, *What we know about the Canvas hack that has impacted thousands of schools*, CNN, (May 8, 2026), https://www.cnn.com/2026/05/07/us/canvas-hack-strands-college-students-finals-week.

4932-3403-1275

information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiffs and Class Members of the Data Breach.

15. Plaintiffs bring this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendant including negligence; negligence *per se*; unjust enrichment; breach of implied contract; breach of third-party beneficiary; breach of fiduciary duty; invasion of privacy; and declaratory judgment.

16. Plaintiffs seek to remedy these harms and prevent any future data compromise on behalf of themselves, and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

17. Plaintiff Daniella Rios is a citizen and resident of California.

18. Plaintiff Bella Donna Tordecillas is a citizen and resident of Idaho.

19. Defendant is a Delaware corporation with its headquarters and principal place of business located at 6330 South 3000 East, Suite 700, Salt Lake City, UT 84121. Its registered agent, CT Corporation, is located at 1108 E South Union Ave, Midvale, UT, 84047.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. The number of class members is more than 100 and at least one member of the Class is a citizen of a different state that is diverse from Defendant's citizenship.

4932-3403-1275

21.     This Court has personal jurisdiction over Defendant because Defendant is registered to do business and maintains its principal place of business in this District.

22.     Venue is proper in this Court because Defendant's principal place of business is located in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs claims occurred in this District.

## FACTUAL ALLEGATIONS

### A.     Background on Defendant

23.     Defendant is a Utah-based education technology company that provides services to thousands of schools and millions of students across the country.

24.     Plaintiffs and Class Members directly or indirectly provided their Private Information to Defendant in connection with the services Defendant provides.

25.     Upon information and belief, Defendant made promises and representations to individuals, including Plaintiffs and Class Members, that the Private Information collected from them would be kept safe and confidential, and that the privacy of that information would be maintained, including through its privacy policy.[8]

26.     Plaintiffs and Class Members directly or indirectly provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

---

[8]     *See     Product     Privacy     Notice,*     Instructure,     accessible     at https://www.instructure.com/policies/product-privacy-policy (last visited May 8, 2026) (Hereinafter referred to as the "Privacy Policy").

4932-3403-1275

27.    Upon information and belief, in the course of collecting Private Information from Plaintiff and Class Members, Defendant promised to provide confidentiality and adequate security for the data it collected from Plaintiffs and Class Members through its applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.[9]

28.    As a result of collecting and storing the Private Information of Plaintiffs and Class Members for its own financial benefit, Defendant had a continuous duty to adopt and employ reasonable measures to protect Plaintiffs and the Class Members' Private Information from disclosure to third parties.

**B.    The Data Breach**

29.    The ransom group, ShinyHunters, "claimed to have stolen 280 million student and staff records tied to 8,809 schools, universities, and education platforms using [Instructure's] Canvas learning management system."[10]

30.    The ransom group ShinyHunters posted the following threat to release the Private Information of individuals who used Canvas by Instructure:

---

[9] *Id.*

[10] Lawrence Abrams, Canvas login portals hacked in mass ShinyHunters extortion campaign, BleepingComputer, May 7, 2026, https://www.bleepingcomputer.com/news/security/canvas-login-portals-hacked-in-mass-shinyhunters-extortion-campaign/.

4932-3403-1275



31.    Defendant delayed in reporting the Data Breach to students and schools.

32.    "[T]he hackers have been advertising the breach and attempting to extract a ransom payment from Instructure since May 1."[11] But Instructure marked the Data Breach as "Resolved" as of Wednesday, May 6, with Instructure's chief information security officer writing that "Canvas is fully operational, and we are not seeing any ongoing unauthorized activity."

33.    However, on Thursday May 7, it became clear Instructure had not resolved the vulnerability and the ransom group ShinyHunters launched a second wave of attacks and defacement of the login page with the above ransom message.[12] "[T]he Canvas downtime caused chaos at schools, including those in the midst of finals and end-of-year assignments."[13]

---

[11]Lily Hay Newman, Andy Greenberg, WIRED, (May 8, 2026), https://www.wired.com/story/canvas-hack-shinyhunters-ransomware-instructure/.
[12] Id.
[13] Id.

4932-3403-1275

34.    "Higher education has long been a target of ransomware gangs and data extortion attacks" but this "situation is significant given that a massive trove of student information has potentially been exposed."[14]

35.    Additionally, on information and belief, ShinyHunters used the Canvas login pages for credential harvesting.

36.    Defendant's false notice that the attack was resolved and failure to timely notify Plaintiffs and Class Members of developments further exacerbates their circumstances because: (1) Defendant incorrectly stated it contained and ended the threat, and encouraged victims to continue using its systems despite this not being true; (2) Defendant fails to state how the Breach itself occurred; and (3) Defendant's failure to notify victims deprives victims of the earliest opportunity to take preventative measures to protect their Private Information, including avoiding the use of Defendant's services. All of this information is vital to victims of a data breach, let alone a data breach of this magnitude due to the sensitivity and wide array of information compromised in this specific breach.

37.    Furthermore, Defendant's delay in notifying Plaintiffs and Class Members of the Data Breach is in direct violation of Defendant's responsibilities under the data breach notification statute in Utah, *see* Utah Code 13-44-202(2), which requires that the disclosure notification be made "in the most expedient time possible without unreasonable delay"[15].

38.    Defendant failed to take precautions designed to keep individuals' Private Information secure.

---

[14] *Id.*
[15] While the definition of "reasonable" differs from state to state, it ranges from 30 to 60 days.

39.     While Defendant sought to minimize the damage caused by the Data Breach, it cannot and has not denied that there was unauthorized access to the sensitive Private Information of Plaintiffs and Class Members.

40.     Individuals affected by the Data Breach are, and remain, at risk that their data will be sold or listed on the dark web and, ultimately, illegally used in the future.

41.     Plaintiffs further believe that the Private Information of Class Members was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

**C.      Data Breaches Are Preventable**

42.     Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting its equipment and computer files containing Private Information. As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."[16]

43.     To prevent and detect cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

---

[16] How to Protect Your Networks from RANSOMWARE, at 3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited May 8, 2026).

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[17]

44.    To prevent and detect cyber-attacks or ransomware attacks, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**
- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**
- Prioritize and treat commodity malware infections as potential full compromise

**Include IT Pros in security discussions**
- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**
- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords
- Apply principle of least-privilege

**Monitor for adversarial activities**
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**
- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[18]

---

[17] *Id.* at 3-4.

[18] Microsoft Threat Intelligence, *Human-operated ransomware attacks: A preventable disaster* (Mar 5, 2020), https://www.microsoft.com/en-us/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/

4932-3403-1275

45.     Given that Defendant was storing the sensitive Private Information of Plaintiffs and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

46.     The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the Private Information of Plaintiffs and Class Members.

**D.      Defendant Acquires, Collects, and Stores Plaintiffs' and Class Members' Private Information**

47.     In connection with the services Defendant provides, Plaintiffs and Class Members were required to directly or indirectly give their sensitive and confidential Private Information to Defendant.

48.     Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiffs and Class Members' Private Information, Defendant would be unable to provide its services.

49.     By obtaining, collecting, and storing the Private Information of Plaintiffs and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Private Information from disclosure.

50.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

14

4932-3403-1275

51.    Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the Private Information of Plaintiffs and Class Members.

52.    Upon information and belief, Defendant made promises to Plaintiffs and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

53.    Defendant's negligence in safeguarding the Private Information of Plaintiffs and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**E.    The Data Breach Was Foreseeable and the Defendant Was Aware of Its Risk**

54.    It is well known that Private Information is an invaluable commodity and a frequent target of hackers.

55.    In 2024, 3,158 data breaches occurred, resulting in 1,350,835,988 victim notices— a 211% increase year-over-year.[19]

56.    Individuals place a high value not only on their Private Information, but also on the privacy of that data. For the individual, identity theft causes significant negative financial impact on victims as well as severe distress and other strong emotions and physical reactions.

57.    In light of recent high profile data breaches at other industry-leading companies, including, *e.g.*, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion

---

[19] *2024 Data Breach Report,* ITRC (Identity Theft Resource Center) (Updated Feb. 4, 2025), https://www.idtheftcenter.org/publication/2024-data-breach-report/ (last visited May 11, 2026).

4932-3403-1275

records, May 2020),[20] Defendant knew or should have known that the Private Information that it collected and maintained would be targeted by cybercriminals.

58. In fact, Defendant did know it was a prime target for cybercriminals, including ShinyHunters as Defendant has previously suffered a data breach at the hands of ShinyHunters.[21]

59. Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

60. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiffs and Class Members from being compromised.

61. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

62. The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Class Members.

63. The ramifications of Defendant's failure to keep secure the Private Information of Plaintiffs and Class Members are long lasting and severe. Once Private Information is stolen fraudulent use of that information and damage to victims may continue for years.

---

[20]Maria Henriquez, *The top 10 data breaches of 2020*, https://www.securitymagazine.com/articles/94076-the-top-10-data-breaches-of-2020 (last visited May 11, 2026).
[21] https://www.instructure.com/resources/blog/security-incident-update

4932-3403-1275

64.     As an entity in possession of Plaintiffs' and Class Members' Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiffs and Class Members and of the foreseeable consequences if its data security systems and network were breached. This includes the significant costs imposed on Plaintiffs and Class Members because of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

**F.      Defendant Fails to Comply with FTC Guidelines**

65.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

66.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[22]

67.     The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[23]

---

[22] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business-0   (last visited May 11, 2026).
[23] *Id.*

4932-3403-1275

68. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

69. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

70. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information.

71. Defendant failed to properly implement basic data security practices.

72. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

73. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of Plaintiffs and Class Members; Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly,

Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and the Class Members.

G.    **Defendant Fails to Comply with Industry Standards**

74.    As noted above, experts studying cyber security routinely identify companies in possession of Private Information as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

75.    Several best practices have been identified that, at a minimum, should be implemented by companies in possession of Private Information, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendant failed to follow these industry best practices, including a failure to implement multi-factor authentication.

76.    Other best cybersecurity practices that are standard include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendant failed to follow these cybersecurity best practices, including failure to train staff.

77.    Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02,

4932-3403-1275

PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.AT-02, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-03) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

78.     These foregoing frameworks are existing and applicable industry standards for safeguarding data, and upon information and belief, Defendant failed to comply with at least one- or all-of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

**H.     Defendant Owed Plaintiffs and Class Members a Duty to Safeguard their Private Information**

79.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements and its Privacy Policy, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members.

80.     Defendant owed a duty to Plaintiffs and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees and others who accessed Private Information within its network and computer systems on how to adequately protect Private Information.

4932-3403-1275

81.     Defendant owed a duty to Plaintiffs and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

82.     Defendant owed a duty to Plaintiffs and Class Members not to exacerbate the harms from the Data Breach by falsely stating the Data Breach was over when it was not.

83.     Defendant owed a duty of care to Plaintiffs and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

**I.      The Harm Caused by the Data Breach Now and Going Forward**

84.     Victims of data breaches are susceptible to becoming victims of identity theft. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 17 C.F.R. § 248.201(9). When "identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[24]

85.     The type of data that may have been accessed and compromised here can be used to perpetrate fraud and identity theft.

86.     Plaintiffs and Class Members face a substantial risk of identity theft given that their Private Information was compromised in the Data Breach.

87.     Stolen Private Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines. Law enforcement has difficulty policing the "dark web" due to this encryption, which allows users and criminals to conceal their identities and online activity.

---

[24] *Prevention and Preparedness,* New York State Police, https://troopers.ny.gov/prevention-and-preparedness (last visited May 11, 2026).

88.    When malicious actors infiltrate companies and copy and exfiltrate the Private Information that those companies store, the stolen information often ends up on the dark web where malicious actors buy and sell that information for profit.[25]

89.    For example, when the U.S. Department of Justice announced their seizure of AlphaBay—the largest online "dark market"—in 2017, AlphaBay had more than 350,000 listings, many of which concerned stolen or fraudulent documents that could be used to assume another person's identity. [26] Marketplaces similar to the now-defunct AlphaBay continue to be "awash with personally identifiable information (PII) belonging to victims from countries all over the world."[27]

90.    PII remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information and bank details can be sold at a price ranging from $40 to $200.[28]

91.    According to the FBI's Internet Crime Complaint Center (IC3) 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses in 2019, resulting in more than $3.5 billion in losses to individuals and business victims.[29]

---

[25] *Shining a Light on the Dark Web with Identity Monitoring,* IDENTITYFORCE, (Feb. 1, 2020) https://www.identityforce.comiblogishining-light-dark-web-identity-monitoring (last visited May 11, 2026).

[26] *Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web*, ARMOR (April 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud-dark-web/ (last visited May 11, 2026).

[27] *Id.*

[28] *Id.*

[29] *2019 Internet Crime Report Released,* FBI (Feb. 11, 2020) https://www.fbi.gov/news/stories/2019-internet-crime-report-released-021120#:—:text=IC3%2Oreceived%20467%2C361%20complaints%20in,%2Ddelivery%20scams%2C%20and%20extortion (last visited May 11, 2026).

92.     Further, according to the same report, "rapid reporting can help law enforcement stop fraudulent transactions before a victim loses the money for good."[30] Defendant did not rapidly report to Plaintiffs and Class Members that their Private Information had been stolen.

93.     As a result of the Data Breach, the Private Information of Plaintiffs and Class Members has been exposed to criminals for misuse. The injuries suffered by Plaintiffs and Class Members, or likely to be suffered as a direct result of Defendant's Data Breach, include: (a) theft of their Private Information; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of this Breach; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Breach; (f) the imminent injury arising from potential fraud and identity theft resulting from their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damage to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard their Private Information against theft and not allow access to and misuse of their personal data by any unauthorized third party; and (h) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further injurious breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information.

94.     In addition to a remedy for economic harm, Plaintiffs and Class Members maintain an interest in ensuring that their Private Information is secure, remains secure, and is not subject to further misappropriation and theft.

---

[30] *Id.*

4932-3403-1275

95.     Defendant disregarded the rights of Plaintiffs and Class Members by (a) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (b) failing to disclose that it did not have adequately robust security protocols and training practices in place to safeguard Plaintiffs' and Class Members' Private Information; (c) failing to take standard and reasonably available steps to prevent the Data Breach; and (d) failing to provide Plaintiffs and Class Members prompt and accurate notice of the Data Breach.

96.     The actual and adverse effects to Plaintiffs and Class Members, including the imminent, immediate, and continuing increased risk of harm for identity theft and identity fraud directly or proximately caused by Defendant's wrongful actions and/or inaction and the resulting Data Breach require Plaintiffs and Class Members to take affirmative acts to recover their peace of mind and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or interne monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts, for which there is a financial and temporal cost. Plaintiffs and other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

**J.      Loss of Time to Mitigate the Risk of Identity Theft and Fraud**

97.     As a result of the recognized risk of identity theft, when a data breach occurs and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim

of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm.

98.    Thus, due to the imminent risk of identity theft, Plaintiffs and Class Members must monitor their financial accounts for many years to mitigate the risk of identity theft.

99.    Plaintiffs and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords and resecuring their own computer systems.

100.    For Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[31]

### K.    Diminution of Value of Private Information

101.    Private Information is valuable property.[32] Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates, beyond doubt, that Private Information has considerable market value.

102.    Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[33]

---

[31] *See* United States Government Accountability Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/new.items/d07737.pdf (last visited May 11, 2026).

[32] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[33] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market,* InfoSec (July 27, 2015), https://resources. infosecinstitute. com/topic/hackers-selling-healthcare-data-in-the-black-market/.

4932-3403-1275

103.    An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[34] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[35] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $60 a year.[36]

104.    As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

105.    The fraudulent activity resulting from the Data Breach may not come to light for years.

106.    Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiffs and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

107.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network.

---

[34] David Lazarus, *Shadowy data brokers make the most of their invisibility cloak*, LA Times, (Nov. 5, 2019), https://www.latimes.com/business/story/2019-11-05/column-data-brokers.
[35] *See Data Coup*, https://datacoup.com/ (last visited May 11, 2026).
[36] https://computermobilepanel.nielsen.com/ui/US/en/sdp/landing (last visited May 11, 2026)

108.    The injuries to Plaintiffs and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiffs and Class Members.

**L.    The Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary**

109.    Given the type of targeted attack in this case, the sophisticated criminal activity, the volume of data compromised in this Data Breach, and the sensitive type of Private Information involved in this Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes—e.g., opening bank accounts in the victims' names to make purchases or to launder money; perpetrating sophisticated phishing/impersonation scams; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

110.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that their Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

111.    Consequently, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

112.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member.[37] This is a reasonable and necessary cost to monitor and protect

---

[37] https://www.identityforce.com/identity-protection-pricing (last visited May 11, 2026).

Class Members from the risk of identity theft resulting from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiffs and Class Members would not need to bear, but for Defendant's failure to safeguard their Private Information.

### M. Loss of the Benefit of the Bargain

113. Furthermore, Defendant's poor data security deprived Plaintiffs and Class Members of the benefit of their bargain. When agreeing to provide their Private Information, Plaintiffs and other reasonable Class Members understood and expected that they were, in part, exchanging their Private Information for Defendant's services and necessary data security to protect the Private Information when, in fact, Defendant did not provide the expected data security. Accordingly, Plaintiffs and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

### N. Plaintiffs' Allegations

*Plaintiff Daniella Rios*

114. Upon information and belief, Defendant acquired and maintained Plaintiff Rios' Private Information as part of its standard business practices and in connection with her school.

115. Plaintiff Rios was required to provide Defendant with her Private Information in order to complete assignments and view her courses online.

116. Defendant was in possession of Plaintiff Rios' Private Information before, during and after the Data Breach.

117. Plaintiff reasonably understood and expected that Defendant would safeguard her Private Information and timely and adequately notify her in the event of a data breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's position, to maintain her Private

4932-3403-1275

Information if she believed that Defendant would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

118. Plaintiff greatly values her privacy and Private Information and takes reasonable steps to maintain the confidentiality of her Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud that she is at an increased risk of experiencing, as a result of the Data Breach.

119. Plaintiff is also concerned about the private messages sent to her professors about academic accommodation through Defendant's platform that she believed would remain confidential.

120. Plaintiff chooses unique usernames and passwords for her various online accounts.

121. As a result of the Data Breach, Plaintiff has spent significant time researching the Data Breach, changing her passwords, and other necessary mitigation efforts. This is valuable time that Plaintiff that she otherwise would have spent on other activities, including but not limited to work and/or recreation.

122. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has yet to notify her of the relevant details about the Data Breach including the exact type of information that could be at risk.

123. Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at a present and continued increased risk of identity theft and fraud for years to come.

124. Plaintiff has a continuing interest in ensuring that her Private Information, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

4932-3403-1275

125.    As a direct and traceable result of the Data Breach, Plaintiff suffered injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her Private Information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff and (g) other economic and non-economic harm.

***Plaintiff Bella Donna Tordecillas***

126.    Upon information and belief, Defendant acquired and maintained Plaintiff Tordecillas' Private Information as part of its standard business practices and in connection with her school.

127.    Plaintiff Tordecillas was required to provide Defendant with her Private Information in order to complete assignments and view her courses online.

128.    Defendant was in possession of Plaintiff Tordecillas' Private Information before, during and after the Data Breach.

129.    Plaintiff reasonably understood and expected that Defendant would safeguard her Private Information and timely and adequately notify her in the event of a data breach. Plaintiff would not have allowed Defendant, or anyone in Defendant's position, to maintain her Private Information if she believed that Defendant would fail to implement reasonable and industry standard practices to safeguard that information from unauthorized access.

4932-3403-1275

130. Plaintiff greatly values her privacy and Private Information and takes reasonable steps to maintain the confidentiality of her Private Information. Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud that she is at an increased risk of experiencing, as a result of the Data Breach.

131. On or about May 1, 2026, around the time of the Data Breach, Plaintiff noticed fraudulent charges on a credit card she had used in connection with Defendant's platform.

132. Additionally, Plaintiff is now unable to access her educational materials she reasonably expected she would be able to access through Defendant's platform during finals.

133. Plaintiff diligently chooses unique usernames and passwords for her various online accounts.

134. As a result of the Data Breach, Plaintiff has spent significant time researching the Data Breach, reviewing her bank accounts, changing her passwords, and other necessary mitigation efforts. This is valuable time that Plaintiff would otherwise have spent on other activities, including but not limited to work and/or recreation.

135. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has yet to notify her of the relevant details about the Data Breach.

136. Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at a present and continued increased risk of identity theft and fraud for years to come.

137. Plaintiff has a continuing interest in ensuring that her Private Information, which upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

4932-3403-1275

138.    As a direct and traceable result of the Data Breach, Plaintiff suffered injury and damages after her Private Information was compromised and stolen in the Data Breach, including, but not limited to: (a) lost time and money related to monitoring her accounts and credit reports for fraudulent activity; (b) loss of privacy due to her Private Information being accessed and stolen by cybercriminals; (c) loss of the benefit of the bargain because Defendant did not adequately protect her Private Information; (d) emotional distress because identity thieves now possess her Private Information; (e) imminent and impending injury arising from the increased risk of fraud and identity theft now that her Private Information has been stolen and likely published on the dark web; (f) diminution in the value of her Private Information, a form of intangible property that Defendant obtained from Plaintiff and (g) other economic and non-economic harm.

## CLASS ALLEGATIONS

139.    Plaintiffs bring this class action, individually and on behalf of the class defined as:

> **Nationwide Class:** All persons residing in the United States who were impacted by Defendant's Data Breach (the "Class" or "Class Members").

140.    Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

141.    Plaintiffs reserve the right to amend the Class definition above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

4932-3403-1275

142.     This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

143.     Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of individuals is currently unknown to Plaintiffs and exclusively in the possession of Defendant, upon information and belief, the Class is likely comprised of hundreds and possibly even thousands of Class Members. The Class is sufficiently numerous to warrant certification.

144.     Typicality of Claims: Plaintiffs' claims are typical of those of other Class Members because Plaintiffs, like the unnamed Class, had their Private Information compromised as a result of the Data Breach. Plaintiffs are a member of the Class, and their claims are typical of the claims of the members of the Class. The harm suffered by Plaintiffs is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

145.     Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interests antagonistic to, nor in conflict with, the Class. Plaintiffs have retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

146.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

4932-3403-1275

147. <u>Predominant Common Questions:</u> The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including:

a.      Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

b.      Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

c.      Whether Defendant's storage of Plaintiffs and Class Members' Private Information was done in a negligent manner;

d.      Whether Defendant had a duty to protect and safeguard Plaintiffs and Class Members' Private Information;

e.      Whether Defendant's conduct was negligent;

f.      Whether Defendant's conduct violated Plaintiffs' and Class Members' privacy;

g.      Whether Defendant took sufficient steps to individuals' Private Information;

h.      Whether Defendant was unjustly enriched; and

i.      The nature of relief, including damages and equitable relief, to which Plaintiffs and Class Members are entitled.

148. Information concerning Defendant's policies is available from Defendant's records.

4932-3403-1275

149.    Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

150.    The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

151.    Given that Defendant has not indicated any changes to its conduct or security measures, monetary damages are insufficient and there is no complete and adequate remedy at law.

## CLAIMS FOR RELIEF

### Count I – Negligence
**(On Behalf of Plaintiffs and the Classes)**

152.    Plaintiffs restate the allegations in Paragraphs 1 through 151 above, as if fully set forth herein.

153.    Defendant knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Private Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

154.    Defendant knew or should have known of the risks inherent in collecting Plaintiffs' and Class Members' Private Information and the importance of adequate security. Defendant were on notice because they knew or should have known that they are attractive targets for cyberattacks seeking sensitive Private Information.

4932-3403-1275

155.     Defendant owed a non-delegable duty of care to Plaintiffs and Class Members whose Private Information was entrusted to them. Defendant's duties included, but were not limited to, the following:

a.     To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

b.     To protect their patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c.     To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

d.     To employ reasonable security measures and to otherwise protect the Private Information of Plaintiffs and Class Members pursuant to federal and state regulations;

e.     To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f.     To promptly notify Plaintiffs and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

156.     Defendant' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair… practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

157.     Defendant holds itself out as trusted data collectors, and thereby assume a duty to reasonably protect Private Information. Indeed, Defendant, as a data collector, were in a

4932-3403-1275

unique and superior position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

158. Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.

159. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within Defendant' possession.

160. Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Plaintiffs' and Class Members' Private Information.

161. Defendant, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

162. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

b. Failing to adequately monitor the security of their networks and systems;

c. Failing to periodically ensure that their email systems maintained reasonable data security safeguards;

d.      Allowing unauthorized access to Class Members' Private Information;

e.      Failing to comply with the FTCA; and

f.      Failing to detect in a timely manner that Class Members' Private Information had been compromised.

163.     Defendant had a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions.

164.     Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs and Class Members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

165.     As a result of Defendant's ongoing failure to notify Plaintiffs and Class Members regarding exactly what Private Information has been compromised, Plaintiffs and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

166.     Defendant's breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

167.     As a result of Defendant's negligence in breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

4932-3403-1275

168.     As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

169.     The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

170.     Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

171.     In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

### Count II – Negligence *per se*
### (On Behalf of Plaintiffs and the Classes)

172.     Plaintiffs restate the allegations in Paragraphs 1 through 151 above, as if fully set forth herein.

173.     Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

174.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act

also form part of the basis of Defendant' duty to protect Plaintiffs' and the Class Members' sensitive Private Information.

175.    Defendant breached its duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

176.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

177.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. The FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

178.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and their patients, which is recognized at common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class Members from a data breach.

179.    Defendant's duty to use reasonable security measures required Defendant to take reasonable measures in protecting educational records and Private Information from any

unauthorized use or disclosure. Some or all of the personal and/or educational records at issue in this case fall under "education records"[38] necessitating higher care.

180.    Defendant violated its duty under FERPA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

181.    But for Defendant's wrongful and negligent breach of their duties owed, Plaintiffs and Class Members would not have been injured.

182.    The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that they were failing to meet their duties and that the breach would cause Plaintiffs and Class Members to suffer the foreseeable harms associated with the exposure of their Private Information. Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

183.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries (as detailed supra).

## Count III – Breach of Third-Party Beneficiary Contract

---

[38] "Education records" are records that are directly related to a student and that are maintained by an educational agency or institution or a party acting for or on behalf of the agency or institution. These records include but are not limited to grades, transcripts, class lists, student course schedules, health records (at the K-12 level), student financial information (at the postsecondary level), and student discipline files. The information may be recorded in any way, including, but not limited to, handwriting, print, computer media, videotape, audiotape, film, microfilm, microfiche, and e-mail. 34 CFR § 99.2.

4932-3403-1275

**(On Behalf of Plaintiffs and the Classes)**

184.    Plaintiffs restate the allegations in Paragraphs 1 through 151 above, as if fully set forth herein.

185.    Upon information and belief, Defendant entered into valid contracts with its clients, including the academic institutions Plaintiffs attend, to provide software products and/or services, which included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be entrusted to Defendant.

186.    Such contracts were made expressly for the benefit of Plaintiffs and the Classes, as it was their Private Information that Defendant agreed to receive and protect through their services.

187.    The benefit of collection and protection of the Private Information belonging to Plaintiffs and the Classes was the direct and primary objective of the contracting parties, and Plaintiffs and the Class Members were direct and express beneficiaries of such contracts.

188.    Plaintiffs and the Classes are also intended third-party beneficiaries of these contracts because recognizing them as such is appropriate to effectuate the intentions of the parties, and the circumstances indicate that Defendant intended to give the beneficiaries the benefit of the promised performance.

189.    Defendant knew that if they were to breach these contracts, customers, including Plaintiffs and the Classes, would be harmed by, among other harms, fraudulent transactions and the need to expend time and money to protect themselves from identity theft.

190.    Defendant breached its contracts when it failed to use reasonable data security measures and/or reasonable measures and allowed the Data Breach to occur.

4932-3403-1275

191.     As foreseen, Plaintiffs and the Classes were harmed by Defendant's failure to use reasonable data security measures to securely store and protect the files in their care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information. Accordingly, Plaintiffs and the Classes are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

<b><u>Count IV – Breach of Implied Contract</u></b><br><b>(On Behalf of Plaintiffs and the Classes)</b>

192.     Plaintiffs restate the allegations in Paragraphs 1 through 151 above, as if fully set forth herein.

193.     Defendant provides education-related services to Plaintiffs and Class Members. Plaintiffs and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiffs and Class Members paying for services from Defendant (either directly or through their educational institutions).

194.     Through Defendant's sale of educational services, they knew or should have known that they must protect Plaintiffs' and Class Members' confidential Private Information in accordance with Defendant's policies, practices, and applicable law.

195.     As consideration, Plaintiffs and Class Members paid money (or money was paid on their behalf) to Defendant and turned over valuable Private Information to Defendant. Accordingly, Plaintiffs and Class Members bargained with Defendant to securely maintain and store their Private Information.

196.     Defendant solicited, offered, and invited Plaintiffs and Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiffs and

Class Members accepted Defendant's offers and provided their Private Information through Defendant's platform.

197.    Defendant accepted possession of Plaintiffs' and Class Members' Private Information for the purpose of providing education-related services to Plaintiffs and Class Members.

198.    In delivering their Private Information to Defendant and paying for services, Plaintiffs and Class Members intended and understood that Defendant would adequately safeguard Private Information as part of that service.

199.    Defendant's implied promises to Plaintiffs and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of their employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with industry standards to make sure that Plaintiffs' and Class Members' Private Information would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

200.    Plaintiffs and Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

201.    Had Defendant disclosed to Plaintiffs and the Classes that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and the Classes Members would not have provided their Private Information to Defendant.

202.    As providers of education-related services that collect vast amounts of information, Defendant recognized (or should have recognized) that Plaintiffs' and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the other Class Members.

203.    Defendant violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Private Information.

204.    Additionally, Defendant breached the implied contracts with Plaintiffs and Class Members by failing to ensure the confidentiality and integrity of electronic Private Information they created, received, maintained, and transmitted.

205.    Defendant also breached the implied contracts with Plaintiffs and Class Members by failing to implement technical policies and procedures for electronic systems that maintain electronic Private Information to allow access only to those persons or software programs that have been granted access rights.

206.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations.

207.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that are known to Defendant.

208.    Defendant further breached the implied contracts with Plaintiffs and the Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic Private Information.

4932-3403-1275

209.     Defendant further breached the implied contracts with Plaintiffs and the Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic Private Information.

210.     Defendant further breached the implied contracts with Plaintiffs and the Class Members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard Private Information.

211.     Defendant further breached the implied contracts with Plaintiffs and the Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' Private Information.

212.     A meeting of the minds occurred, as Plaintiffs and the Class Members agreed, *inter alia*, to provide accurate and complete Private Information and to pay Defendant in exchange for Defendants' agreement to, *inter alia*, protect their Private Information.

213.     Plaintiffs and the Class Members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

### Count V – Unjust Enrichment
### (On Behalf of Plaintiffs and the Classes)

214.     Plaintiffs restate the allegations in Paragraphs 1 through 151 above, as if fully set forth herein.

215.     Plaintiffs and the Class Members conferred a benefit on Defendant by turning over their Private Information to Defendant and by paying for educational services (or having their educational institutions pay for the services) that should have included cybersecurity

4932-3403-1275

protection to protect their Private Information. Plaintiffs and the Class Members did not receive such protection.

216. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made to it by Plaintiffs and the Class Members (or on their behalf).

217. As such, a portion of the payments made by Plaintiffs and the Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

218. Defendant has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiffs and the Class Members that should have been used for adequate cybersecurity practices that they failed to provide.

219. Defendant knew that Plaintiffs and the Class Members conferred a benefit upon them, which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiffs and the Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiffs' and the Class Members' Private Information and prevented the Data Breach.

220. If Plaintiffs and the Class Members had known that Defendant had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

221. Due to Defendant's conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant to be permitted to retain the benefit of their wrongful conduct.

4932-3403-1275

222.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and are at a continual, substantial, imminent risk of injury, as alleged herein.

223.    Plaintiffs and the Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

224.    Plaintiffs and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

### Count VI – Invasion of Privacy
**(On Behalf of Plaintiffs and the Classes)**

225.    Plaintiffs restate the allegations in Paragraphs 1 through 151 above, as if fully set forth herein.

226.    Plaintiffs and the Class Members had a reasonable expectation of privacy in the Private Information Defendant mishandled.

227.    As a result of Defendant's conduct, publicity was given to Plaintiffs' and Class Members' Private Information, which necessarily includes matters concerning their private life.

228.    A reasonable person of ordinary sensibilities would consider the publication of Plaintiffs' and the Class Members' Private Information to be highly offensive.

4932-3403-1275

229. Plaintiffs' and the Class Members' Private Information is not of legitimate public concern and should remain private.

230. As a direct and proximate result of Defendant's public disclosure of private facts, Plaintiffs and the Class Members are at a current and ongoing risk of identity theft and sustained injuries and damages as alleged herein.

231. Plaintiffs and the Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

232. Plaintiffs and the Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate identity protection and credit monitoring services to all Class Members.

<u>**Count VIII – Declaratory Judgment**</u>
**(On Behalf of Plaintiffs and the Classes)**

233. Plaintiffs restate the allegations in Paragraphs 1 through 151 above, as if fully set forth herein.

234. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

235. In the fallout of the Data Breach, an actual controversy has arisen about Defendant's various duties to use reasonable data security. On information and belief, Plaintiffs and the Class allege that Defendant's actions were—and still are—inadequate and unreasonable.

4932-3403-1275

And Plaintiffs and the Class Members continue to suffer injury from the ongoing threat of fraud and identity theft.

236.    Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to them;

b.    Defendant has a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c.    Defendant breached, and continues to breach, its duties by failing to use reasonable measures to protect the data entrusted to them; and

d.    Defendant's breaches of its duties caused—and continue to cause—injuries to Plaintiffs and Class Members.

237.    The Court should also issue corresponding injunctive relief requiring Defendant to use adequate security consistent with industry standards to protect the data entrusted to them.

238.     If an injunction is not issued, Plaintiffs and the Classes will suffer irreparable injury and lack an adequate legal remedy if Defendant experience a second data breach.

239.    And if a second breach occurs, Plaintiffs and the Classes will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full, and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiffs' and Class Members' injuries.

4932-3403-1275

240. If an injunction is not issued, the resulting hardship to Plaintiffs and the Class Members far exceeds the minimal hardship that Defendant could experience if an injunction is issued. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class Members, and the public at large.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class Members request judgment against Defendant and that the Court enter an order:

a. Certifying this action as a class action, defining the Classes as requested herein, appointing the undersigned as class counsel, and finding that Plaintiffs are proper and adequate representatives of the Classes requested herein;

b. Awarding Plaintiffs and Class Members appropriate monetary relief, including actual damages, statutory damages, nominal damages, equitable relief, restitution, disgorgement, and statutory costs;

c. Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d. Instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e. Requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. Requiring Defendant to implement enhanced data security measures in order to better protect the Private Information in their possession and control;

g. Awarding Plaintiffs and Class Members prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

4932-3403-1275

h.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class Members demand a trial by jury on all triable issues.

Dated: May 12, 2026                                    Respectfully submitted,


/s/*Brady L. Rasmussen*
Brady L. Rasmussen
**Parsons Behle & Latimer**

Norman E. Siegel*
Barrett J. Vahle*
Andi M. Hammack*
**Stueve Siegel Hanson LLP**

*Attorneys for Plaintiffs and on behalf of all others similarly situated*

*\* pro hac vice pending*

4932-3403-1275